# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

RITCHIE SMITH,

Plaintiff,

v.                                                         3:12-CV-1665
                                                           (FJS/ATB)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

PETER A. GORTON, ESQ., for Plaintiff
VERNON NORWOOD, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable

Frederick J. Scullin, Jr., Senior United States District Judge, pursuant to 28 U.S.C.

§ 636 (b) and Local Rule 72.3(d).  This case has proceeded in accordance with

General Order 18.  Plaintiff's brief was filed on April 25, 2013, and defendant's brief

was filed on June 10, 2013. (Dkt. Nos. 13, 14).  Plaintiff was granted permission to

file, and subsequently filed, a reply. (Dkt. Nos. 16, 17).

## I.   PROCEDURAL HISTORY

On June 4, 2009, plaintiff protectively[1] filed an application for Disability

Insurance Benefits ("DIB") and an application for Supplemental Security Income

---

[1] The term "protective filing," used in conjunction with an application for benefits, indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits.  *See* 20 C.F.R. §§ 404.630, 416.340. There are various requirements for this written statement.  *Id.*  If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a future date.

("SSI"), claiming disability beginning June 13, 2007. (Administrative Transcript ("T") 155-58, 162-64). Both applications were denied initially, and plaintiff requested a hearing before an Administrative Law Judge. ("ALJ"). (T. 70-84, 85-86). The video-hearing, at which plaintiff and his fiancé testified, was conducted on February 28, 2011. (T. 41-69). At the hearing, plaintiff amended his claimed onset date to February 15, 2009. (T. 45). Plaintiff submitted additional evidence to the ALJ after the hearing. (T. 189, 282-312, 580-653). On April 15, 2011, the ALJ issued a decision, finding that plaintiff was not disabled. (T. 16-40).

On October 12, 2012, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (T. 7-12). The plaintiff's counsel submitted additional evidence to the Appeals Council after the first denial. (T. 313-23, 654-713). The Appeals Council set aside its October 12, 2012 decision to consider the additional evidence, making that evidence a part of the record. (T. 1). On December 3, 2012, the Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner, allowing plaintiff to file a civil action in this court. (T. 1-6).

## II.    ISSUES IN CONTENTION

The plaintiff makes the following claims:

1.    The Commissioner failed to properly assess plaintiff's fibromyalgia. (Pl.'s Br. at 10-12).

2.    The ALJ failed to properly evaluate the opinion of plaintiff's treating physicians. (T. 12-13).

3.    The evidence submitted to the Appeals Council warrants reversal, or in

the alternative, remand.[2] (Pl.'s Br. 13-14).

4.      The ALJ erred in finding that plaintiff did not satisfy the requirements for Listing 12.04. (Pl.'s Br. at 14-16).

5.      The ALJ's Residual Functional Capacity ("RFC") determination is not supported by substantial evidence. (Pl.'s Br. at 17-19).

6.      The ALJ's credibility determination is not supported by substantial evidence. (Pl.'s Br. at 20).

7.      The ALJ erred in failing to consult a Vocational Expert ("VE"). (Pl.'s Br. at 20-22).

Defendant argues that the Commissioner's decision is supported by substantial evidence and should be affirmed, dismissing the complaint in its entirety. (Dkt. No. 14). For the following reasons, this court finds that this action should be reversed and remanded for further consideration.

## III.   APPLICABLE LAW

### A.   Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

---

[2] Although this argument appears in the middle of plaintiff's brief, this court will consider this argument first, and then at it relates to plaintiff's other arguments.

physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him [per se] disabled . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417-18 (2d Cir. 2013) (quoting *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012)); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir.

2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's residual functional capacity"); *Selian*, 708 F.3d at 418 & n.2.

## B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417 (quoting *Talavera v. Astrue*, 697 F.3d at 151; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera*, 697 F.3d at 151 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* This standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

In order to determine whether an ALJ's findings are supported by substantial evidence, the reviewing court must consider the whole record, examining the evidence from both sides, "'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Petrie v. Astrue*, 412 F. App'x 401, 403-404 (2d Cir. 2011) (quoting *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support of the ALJ's decision. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998)

(citing *Williams*, *supra*).

IV.   **FACTS**

Plaintiff's brief contains a lengthy statement of facts that defense counsel has incorporated into his discussion, with the exception of any inferences, suggestions, or arguments that the brief contains. (Def.'s Br. at 2) (Dkt. No. 14).  Defense counsel has also supplemented the plaintiff's statement of facts. (*Id.* at 2-9).  This court will incorporate the statements of fact contained in both parties' briefs, including the supplemental facts stated by the defendant.

V.   **THE ALJ'S DECISION**

The ALJ found that plaintiff had four severe impairments: depressive disorder, degenerative joint disease of the left knee, degenerative disc disease of the cervical spine, and bilateral carpal tunnel syndrome. (T. 21).  Plaintiff alleged additional impairments which the ALJ found were not severe: obstructive sleep apnea, diabetes, high blood pressure, left knee pain, left foot numbness, fibromyalgia, and low back pain. (T. 22).

The ALJ determined that although plaintiff experienced low back pain beginning in February of 2009, a June 2, 2010 MRI of his lumbar spine was normal. (*Id.*)  With respect to the fibromyalgia, the ALJ sated that there was no evidence of record that any acceptable medical source, including plaintiff's treating pain physician, Dr. Xiao Fang, diagnosed the condition in accordance with the American College of Rheumatology standards. (T. 22). The ALJ also specifically noted plaintiff's obesity and stated that although plaintiff was obese, each examiner who

6

offered an opinion of plaintiff's RFC, either saw plaintiff, made note of his weight, or commented on his obesity. The ALJ found that these opinions necessarily considered the plaintiff's obesity, and by considering these opinions, the ALJ was also fully considering the effect of plaintiff's obesity on his ability to function. (*Id.*)

At Step 3 of the disability analysis, the ALJ found that plaintiff did not have a Listed Impairment. (T. 23-25). The ALJ considered plaintiff's physical impairments under Listings 1.02 (Major Dysfunction of a Joint - due to any cause); and 1.04 (Disorders of the Spine). (T. 23). After a brief discussion, the ALJ found that plaintiff's physical impairments did not rise to the level of a listed impairment.

The ALJ undertook a more lengthy analysis of plaintiff's mental impairment under Listing 12.04 (Affective Disorders). (*Id.*) The ALJ considered the four broad functional areas, contained in the regulations, for rating the degree of an individual's functional limitations, known as the "'paragraph B'" criteria for Listings 12.02-12.04, 12.06-12.08, and 12.10, and as known as the "'paragraph D'" criteria for Listing 12.05. (*Id.*) These areas are activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. (*Id.*)

In order to meet the severity of a listed impairment under the paragraph B criteria, plaintiff must have at least two "marked" limitations or have one "marked" limitation in conjunction with "repeated" episodes of decompensation each of extended duration. (T. 24). Based on plaintiff's mental impairment, the ALJ found that plaintiff had only mild restrictions in his activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration,

persistence, or pace; and there was no evidence of *any* episodes of decompensation in the record. (T. 24).

The ALJ also found that plaintiff did not meet the requirements of the "'paragraph C'" criteria for Listing 12.04. Paragraph C requires that plaintiff show a medically documented history of an affective disorder of at least two years duration that has caused more than a minimal limitation of the plaintiff's ability to do basic work activities, with symptoms or signs that are "currently attenuated by medication or psychososical support, and one of the following: repeated episodes of decompensation of extended duration; a residual disease process, resulting in such marginal adjustment that even a minimal increase in mental demands or a change in plaintiff's environment would cause him to decompensate; or a current history of one or more years, showing the inability to function outside a highly supportive living arrangement, with the need to continue such arrangement. (T. 25).

In making his determination, the ALJ gave "considerable weight" to a Psychiatric Review Technique form completed by Dr. Harding, a state agency review psychologist, who found that plaintiff had moderate difficulties *only* in the area of concentration, persistence, or pace and mild restrictions in all other areas, with no episodes of decompensation. The ALJ found that Dr. Harding's report was consistent with the record as a whole. (*Id.*) The ALJ stated that, although he was making the above findings for purposes of the Listings at Step 3, he would also have to consider the plaintiff's mental impairment further at Steps 4 and 5 of the sequential evaluation process, where he would undertake a more detailed analysis. (*Id.*)

At Step 4, the ALJ found that plaintiff had the RFC for sedentary work, and should avoid climbing ladders, scaffolds, or ropes and working at unprotected heights. Plaintiff maintained the ability to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention and concentration for simple tasks; regularly attend to a routine and maintain a schedule; relate to and interact appropriately with others; and handle reasonable levels of simple, repetitive work-related stress. (T. 25). The ALJ considered plaintiff's alleged symptoms, including pain, and determined that plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC assessment. (T. 26-28).

The ALJ found that plaintiff's activities showed that he was doing more than his allegations would suggest, and that there were only minimal positive diagnostic and clinical findings corroborating the extent of plaintiff's symptoms. (T. 28). The ALJ also noted that there were gaps in plaintiff's treatment, and that plaintiff had not sought any medical treatment for his left knee since January 22, 2009, a period of two years prior to the hearing held on February 28, 2011. (T. 28). Plaintiff attended only six physical therapy sessions prior to being discharged for non-compliance. Finally, the ALJ stated that there were no opinions from any of the plaintiff's treating mental health providers regarding his "mental limitations." (*Id.*)

The ALJ specified the weight that he gave to the reports of plaintiff's medical providers in determining plaintiff's RFC. (T. 28-29). The ALJ gave significant weight

to the Dr. Pranab Datta's consultative report,[3] except for his conclusion that plaintiff would have to frequently change position because there was "no support in the record" for that portion of Dr. Datta's opinion. (T. 29).

The ALJ gave substantial weight to the report of plaintiff's treating orthopedic surgeon, Dr. Daniel P. Federowicz, who stated that plaintiff's symptoms were not severe, and plaintiff was capable of performing sedentary work. (T. 29). Some weight was given to the independent medical examination for Workers' Compensation, performed by Dr. Lawrence Schulman, indicating that plaintiff was capable of sedentary work, notwithstanding his limitations. Some weight was given to the report of Dr. Xiao Fang,[4] noting that Dr. Fang's opinion would not preclude plaintiff from performing sedentary work, to the extent that Dr. Fang's findings were corroborated by "actual diagnostic findings." (T. 29). Because of plaintiff's negative lumbar MRI results, the ALJ rejected Dr. Fang's finding that plaintiff must be allowed to alternate between sitting and standing. (T. 29-30). The ALJ gave little weight to Dr. John Wacendak, plaintiff's treating primary care physician, because his report noted that it was based solely on the plaintiff's own reports and not on any particular medical test. (T. 30).

With respect to plaintiff's mental impairment, significant weight was placed on psychologist, Dr. Dennis Noia's consultative mental evaluation. (T. 30). Dr. Noia found that although plaintiff had some trouble dealing with stress, he could perform

---

[3] Dr. Datta's specialty is Internal Medicine.

[4] Dr. Fang is a pain specialist.

many functions from a vocational standpoint, including maintaining concentration and attention for tasks. Substantial weight was given to Dr. Robert Russell in connection with his June 2009 mental evaluation, in which he concluded that the plaintiff's depression would not likely interfere with any work position that the plaintiff could take, and that being employed would go a long way toward reducing his depression. (T. 30). The ALJ gave little weight to Dr. Fang's opinion that plaintiff's ability to concentrate and sustain work pace were severely limited by his "mental condition." (T. 31). The ALJ stated that Dr. Fang was not treating plaintiff's psychiatric problem, but was adopting a previous psychiatric diagnosis, and was merely relying on plaintiff's subjective report. (T. 31). The ALJ found that Dr. Fang's statements in this regard were not supported by the evidence in the record.

At Step 4, the ALJ also found that plaintiff could not return to his former work. (T. 31). At Step 5, the ALJ found that plaintiff still had the ability to perform a full range of sedentary work that was not further diminished by his nonexertional impairments. Using the Grid as a framework, the ALJ found that plaintiff was not disabled. (T. 32).

## VI. <u>NEW EVIDENCE</u>

### A. **Legal Standards**

Evidence submitted to the Appeals Council becomes part of the administrative record. *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir.1996). However,

> the Appeals Council . . . will consider new evidence only if
> (1) the evidence is material, (2) the evidence relates to the
> period on or before the ALJ's hearing decision, and (3) the

> Appeals Council finds that the ALJ's decision is contrary to
> the weight of the evidence, including the new evidence.

*Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010); 20 C.F.R. §§ 404.970(b), 404.976(b), 416.1470(b), 416.1476(b); *see also Baladi v. Barnhart*, 33 F. App'x 562, 564 (2d Cir. 2002) (new evidence forms part of the administrative record under review "only to the extent that it relates to the time frame encompassed in the ALJ's decision"). "Materiality requires that the new evidence not concern 'a later-acquired disability or the subsequent deterioration of the previous non-disabling condition.'" *Pearson v. Astrue*, 1:10-CV-521 (MAD), 2012 WL 527675, at *11 (N.D.N.Y. Feb. 17, 2012) (*citing Estevez v. Apfel*, 97 Civ. 4034, 1998 WL 872410, at *7 (S.D.N.Y. Dec. 14, 1998)).

When the Appeals Council denies review after considering new evidence, the court simply reviews the entire administrative record, including the new evidence, and determines whether there is substantial evidence to support the Commissioner's decision. *Perez*, 77 F.3d at 46. If the new evidence is from a treating source, the Appeals Council is required to apply the treating physician rule and explain the weight that it gave to the treating physician's opinion. *Flagg v. Colvin*, No. 5:12-CV-644, 2013 WL 4504454, at *5-6 (N.D.N.Y. Aug. 22, 2013); *Stadler v. Barnhart*, 464 F. Supp. 2d 183, 187-88 (W.D.N.Y. 2006). The failure to provide good reasons for not crediting the opinion of a plaintiff's treating physician is grounds for a remand. *Flagg*, 2013 WL 4504454, at *6 (citing *inter alia Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

### B.   Application

In this case, plaintiff submitted five exhibits to the Appeals Council.  One of those exhibits was a June 1, 2012, deposition of plaintiff's treating pain specialist Dr. Fang. (T. 704-13).  Another exhibit is from treating physician, Dr. Lawrence Wiesner, D.O., and consists of four reports discussing plaintiff's knee replacement surgery. (T. 664-68).  Dr. Wiesner also submitted answers to a "Questionnaire." (T. 656-57). Plaintiff's counsel also submitted the June 3, 2011, deposition of Victor G. Alberigi, a vocational expert, discussing the plaintiff's ability to perform other work in the national economy. (T. 315-22).

After reviewing the evidence, the Appeals Council issued a decision, "[a]gain" denying review and stating that "this information does not provided a basis for changing the [ALJ's] decision. (T. 2).  There was no explanation for the denial.  The court will now examine the new evidence in conjunction with the administrative record and the ALJ's decision to determine whether the Appeal's Council's failure to grant review was based on substantial evidence.

### 1.   Severe Impairment/Treating Physician

### a.   Legal Standards

The claimant bears the burden of presenting evidence establishing severity at Step 2 of the disability analysis. *Briggs v. Astrue*, No. 09–CV–1422 (FJS/VEB), 2011 WL 2669476, at *3 (N.D.N.Y. Mar. 4, 2011) (Report-Recommendation), *adopted*, 2011 WL 2669463 (N.D.N.Y. July 7, 2011).  A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work

activities.  *See* 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1521(a) (noting an

impairment is not severe at Step 2 if it does not significantly limit a claimant's ability

to do basic work activities).  The regulations define "basic work activities" as the

"abilities and aptitudes necessary to do most jobs," examples of which include: (1)

physical functions such as walking, standing, lifting, pushing, pulling, reaching,

carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3)

understanding, carrying out, and remembering simple instructions; (4) use of

judgment; (5) responding appropriately to supervision, co-workers and usual work

situations; and (6) dealing with changes in a routine work setting.  20 C.F.R. § 404.

1521(b).  "Severity" is determined by the limitations imposed by an impairment, and

not merely by its diagnosis.

An ALJ should make a finding of " 'not severe' . . . if the medical evidence

establishes only a 'slight abnormality' which would have 'no more than a minimal

effect on an individual's ability to work.' "  *Rosario v. Apfel*, No. 97–CV–5759, 1999

WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting Social Security Ruling ("SSR")

85-28, 1985 WL 56856, at *3).  The Second Circuit has held the Step 2 analysis "may

do no more than screen out *de minimis* claims."  *Dixon v. Shalala*, 54 F.3d 1019, 1030

(2d Cir. 1995).  If the disability claim rises above a *de minimis* level, then the

remaining analysis of the claim at Steps 3 through Step 5 must be undertaken.  *Id.* at

1030.

Often, when there are multiple impairments, as in this case, and the ALJ finds

some, but not all of them severe, an error in the severity analysis at Step 2 may be

harmless because the ALJ continued with sequential analysis and did not deny the claim based on the lack of a severe impairment alone. *Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Commissioner of Soc. Sec.*, No. 7:10-CV-1244, 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)). This is particularly true because the regulations provide that combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523, 416.923; *Dixon*, 54 F.3d at 1031.

It is well-settled, and the regulations require that, deference be given to the medical opinion of a claimant's treating physician; however, the opinion of the treating physician "is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ must properly analyze the reasons that the report of the treating physician is rejected. *Halloran*, 362 F.3d at 32-33.

### b.    Application

In this case, the ALJ found four severe impairments at Step 2 of the sequential analysis and ultimately considered all five steps to determine that plaintiff was not disabled. The ALJ found that plaintiff's low back pain and fibromyalgia were not severe impairments. The ALJ stated that although treating physician, Dr. Xiao Fang diagnosed plaintiff with fibromyalgia, "there is no evidence of record to indicate that

either Dr. Fang or any other acceptable medical source has clearly diagnosed this condition in accordance with the criteria set forth by the American College of Rheumatology, which requires a history of widespread pain and pain that is present in 11 of 18 tender point sites on digital palpation . . . ." (T. 22).

However, Dr. Fang testified during the deposition, submitted to the Appeals Council, that she had tested plaintiff according to the proper standard by determining that he had more than 11 of the 18 trigger points, thus, clarifying her diagnosis. (T. 709-710). Thus, the ALJ's assumption, based on what may have been a misunderstanding of, or vague language in, Dr. Fang's report, was incorrect. If the diagnosis had been stated properly in Dr. Fang's reports, the ALJ may have changed his opinion about whether fibromyalgia was a severe impairment, and it may have changed the ALJ's opinion regarding the effect of this impairment later in the sequential evaluation. Because Dr. Fang is a treating physician, and her deposition makes it clear that the ALJ improperly discounted her diagnosis, the Appeals Council should have articulated a basis for rejecting her clarification. The Appeals Council's summary conclusion was error. *See Judge v. Comm'r of Soc. Sec.*, No. 12-CV-482, 2013 WL 785522, at *7 (N.D.N.Y. Feb. 1, 2013) (citing *Rice v. Barnhart*, No. 03-CV-6222, 2005 WL 3555512, at *13 (W.D.N.Y. Dec. 22, 2005)).

In *Judge*, the court found that the lack of a meaningful explanation by the Appeals Council was particularly troubling when the plaintiff submitted evidence which addressed something that the ALJ found lacking in the evidence before him. *Judge*, 2013 WL 785522, at *7. In *Judge* the ALJ found it significant that the record

did not contain any restrictions from a treating physician regarding the plaintiff's headaches, and plaintiff submitted such evidence to the Appeals Council. The Appeals Council neglected to explain why the evidence would not have changed the ALJ's decision. *Id.* The court found that, "under the circumstances "this sort of conclusory finding [by the Appeals Council] was plainly inadequate as a matter of law and clearly violated the mandate to provide 'good reasons' for discounting a treating physician's opinion." *Id.*

This is exactly what happened in this case. The ALJ found it significant that Dr. Fang did not provide a specific diagnosis under the appropriate guidelines, but in reality, Dr. Fang stated that she had used the guidelines cited by the ALJ. This could have changed the ALJ's finding, the Appeals Council failed to explain why it was rejecting this statement by one of the treating physicians, and the action may be remanded on this basis alone. However, the court will continue to discuss the issues raised by plaintiff so that if the court accepts this recommendation and the case is remanded, the Commissioner's reevaluation will be complete.

### 2.     Listed Impairment

#### a.     Legal Standard

At step three of the disability analysis, the ALJ must determine if plaintiff suffers from a listed impairment. *See* 20 C.F.R. §§ 404.1520, 416.920. It is the plaintiff's burden to establish that his or her medical condition meets *all* of the specific medical criteria of particular listed impairments. *Pratt v. Astrue,* 7:06-CV-551, 2008 WL 2594430 at *6 (N.D.N.Y. 2008) *citing Sullivan v. Zebley,* 493 U.S. 521,

530 (1990).  If a plaintiff's "impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify."  *Id.*  In order to demonstrate medical equivalence, a plaintiff "must present medical findings equal in severity to all the criteria for the *one* most similar listed impairment."  *Sullivan v. Zebley*, 493 U.S. at 531 (emphasis added).

## b.    Application

In this case, plaintiff argues that his depression meets the severity of Listing 12.04.  The evidence submitted to the Appeals Council does not relate to the finding of a listed "mental" impairment, thus, the court will consider the evidence that was before the ALJ.  In order to meet the severity of Listing 12.04, entitled "Affective Disorders," plaintiff must meet the requirements in both subsection A *and* B, or must meet the requirements of subsection C. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04. The ALJ focused on subsections B and C, finding that plaintiff did not meet the requirements of either subsection. (T. 23-25).  While it is questionable from the evidence in the record, that plaintiff even meets the requirements of subsection A of section 12.04, the ALJ's determination that plaintiff does not meet either the B or the C requirements is supported by substantial evidence.

In order to meet the restrictions listed in paragraph B, plaintiff must have two of the following: marked restriction in activities of daily living; marked restriction in maintaining social functioning; marked restriction in maintaining concentration, persistence or pace; or must have repeated episodes of decompensation, each of extended duration.  Plaintiff argues that he meets the requirements of subsection B

18

because he has "marked" restrictions of activities of daily living and "marked" restrictions in maintaining concentration, persistence, or pace. (Pl.'s Br. at 14). These restrictions must be caused by the plaintiff's mental impairment. The ALJ found that plaintiff had only mild restrictions in activities of daily living and moderate restrictions in concentration, persistence, or pace, due to his depression. (T. 23-24). The ALJ then noted plaintiff's daily activities, and cited Dr. Noia's report, finding only that plaintiff had mild restrictions "as a result of his mental impairment." (T. 24).

Plaintiff's brief argues that "[i]n light of his *physical impairments*," plaintiff is limited in sitting, standing, walking, and lifting. (Pl.'s Br. at 14-15). He mentions his carpal tunnel syndrome as a limiting factor as well as plaintiff's inability to sleep the entire night without interruption, making it extremely difficult for plaintiff to engage in the activities of daily living. (*Id.*) However, the listing requires that plaintiff's *mental* impairment be the cause of the marked limitations, not plaintiff's physical impairments.

Although the ALJ does cite Dr. Datta's physical evaluation, which mentions plaintiff's daily activities in general, the ALJ then discusses Dr. Noia's mental evaluation which finds that plaintiff's daily activities are only "mildly" restricted as the result of his mental impairment. (T. 24). Dr. Noia found that plaintiff's demeanor and responsiveness were cooperative, that his manner of relating and social skills were adequate. (T. 498). Plaintiff told Dr. Noia that he got along "well" with family and friends, but he did not take public transportation. (T. 499). Plaintiff testified at the hearing that, when he was feeling depressed, he would stay in his room and did not

like anyone to be around him. (T. 56).

While plaintiff's daily activities and other physical abilities may be further restricted by his physical ailments, that analysis comes at a later stage of the disability evaluation. Plaintiff's entire argument that he meets Listing 12.04 is based upon the alleged restrictions that his physical impairments impose upon his daily activities. Plaintiff makes the same argument when claiming that the ALJ was incorrect in finding that plaintiff had only moderate limitations in concentration, persistence or pace.[5] (Pl.'s Br. at 16).

The ALJ correctly gave weight to Dr. Noia's opinion that plaintiff's attention and concentration were intact, and his recent and remote memory were only mildly impaired. Plaintiff's thought processes were coherent, and goal directed, with no evidence of delusions, hallucinations, or disordered thinking. Finally, the ALJ found that plaintiff did not have any episodes of decompensation. (T. 24). The ALJ properly concluded that although plaintiff had sufficient restrictions resulting from his mental impairment to make that impairment "severe," the impairment did not meet all the requirements of Listing 12.04.

Plaintiff argues that the ALJ should not have given considerable weight to non-examining consultative psychologist Dr. Harding because it was contrary to plaintiff's

---

[5] Plaintiff himself distinguishes between restrictions on his daily activities caused by a "mental" impairment and those caused by his "physical" impairments when he argues that the ALJ erred in finding that Dr. Fang improperly based her opinion on the restrictions caused by plaintiff's "mental" impairment because Dr. Fang is a pain specialist.

treating physician, Dr. Fang.[6]  The ALJ mentioned Dr. Harding *after* he discussed Dr.

Noia's opinion, only to state that the ALJ gave Dr. Harding's Psychiatric Review

Technique Form "considerable weight" because it was "consistent with the evidence

of record as a whole." (T. 25).  Dr. Harding's Psychiatric Review Technique was

consistent with Dr. Noia's report and the rest of the evidence in the record.[7] *See Hunt*

*v. Astrue*, No. 3:11-CV-1436, 2012 WL 2958215, at *15 (D. Conn. July 19, 2012)

(citing 20 C.F.R. § 404.1527(d)) (the more consistent a nonexamining physician's

opinion is with the record as a whole, the more weight it will be given); *Daniels v.*

*Astrue*, No. 10 Civ. 6510, 2012 WL 1415322, at *13 (S.D.N.Y. April 18, 2012) (it was

not error to give state agency psychologist considerable weight).  Because Dr.

Harding's RFC was consistent with the opinion of examining physicians, the ALJ was

justified in giving it considerable weight, particularly when he explained the reason

for doing so. *See Cabassa v. Astrue*, No. 11-CV-1449, 2012 WL 2202951, at *8

(E.D.N.Y. June 13, 2012) (the ALJ must explain the weight given to the opinions of

State Agency medical or psychological consultants).  Thus, the ALJ's Step 3 analysis

is supported by substantial evidence, notwithstanding the submission of the new

---

[6] Plaintiff's brief refers to a "Dr. Wang," but clearly this is a typographical error. (Pl.'s Br. at 16).

[7] Although the ALJ discussed Dr. Russell's report later in his opinion, on June 3, 2009, Dr. Robert Russell, a psychologist stated that the plaintiff's depression was not likely to interfere with any position he takes, and that being employed would go a "long way" toward lessening his depression. (T. 470).  This statement is clearly support for a finding that plaintiff's mental impairment does not meet the severity of a listed impairment.

evidence.[8]

### 3. RFC and Credibility

#### a. Legal Standards

##### i. RFC

In rendering an RFC determination, the ALJ must consider objective medical

facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's

subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R

§§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y.

1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ

must specify the functions plaintiff is capable of performing, and may not simply

make conclusory statements regarding a plaintiff's capacities. *Martone v. Apfel*, 70 F.

Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984);

*LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp.

456, 460 (W.D.N.Y. 1987)).

RFC can only be established when there is substantial evidence of each physical

requirement listed in the regulations. *Id.* The RFC assessment must also include a

narrative discussion, describing how the evidence supports the ALJ's conclusions,

citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 5:09-CV-

1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security

Ruling (SSR) 96-8p, 1996 WL 374184, at *7).

---

[8] The court notes that the ALJ also considered the listed impairments associated with
plaintiff's knee and back impairments. Plaintiff does not argue that the ALJ's decision with respect
to the physical listings was incorrect.

Although the RFC determination is reserved for the commissioner, the RFC assessment is still a medical determination that must be based on medical evidence of record, and the ALJ may not substitute his own judgment for competent medical opinion. *Walker v. Astrue*, No. 08-CV-828, 2010 WL 2629832, at *6 (W.D.N.Y. June 11, 2010) (citing 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2)), (*Report-Recommendation*), *adopted*, 2010 WL 2629821 (W.D.N.Y. June 28, 2010); *Lewis v. Comm'r of Soc. Sec.*, No. 6:00-CV-1225, at *3 (N.D.N.Y. Aug. 2, 2005)). The Second Circuit has stated, however, that "[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). In addition to the plaintiff's own physicians and other medical sources, the ALJ may rely upon a "medical advisor" who is a non-examining state agency "medical consultant" or an examining consultative physician to whom the plaintiff was sent at agency expense. *See Walker v. Astrue*, 2010 WL 2629832 at *6-7.

## ii. Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). To satisfy the

substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. *See* 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged. . . ." 20 C.F.R. § 404.1529(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. *Id.* § 404.1529(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *Id.* § 404.1529(c)(3).

### b. Application

Plaintiff argues that he cannot sit long enough to hold a sedentary job,[9] and that he must have the ability to change position from seated to standing at will. Plaintiff cites Dr. Wiesner's opinion, submitted to the Appeals Council and not considered by the ALJ. Dr. Wiesner found that plaintiff suffers from severe degenerative joint disease of the left knee, and was indicated for a total knee replacement.[10] Dr. Wiesner also stated that plaintiff would need to elevate his feet on an "irregular basis" and would need the flexibility to elevate his feet whenever needed. (T. 656). Dr. Fang also stated that plaintiff must alternate between sitting and standing. (T. 706). Although the ALJ relied upon Dr. Datta's report, he rejected the portion of the report which concluded that the plaintiff would have to change position frequently. (T. 29). The ALJ rejected this part of Dr. Datta opinion because the ALJ believed that Dr. Datta

---

[9] According to the applicable regulations:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a) & 416.967(a). While sitting for six hours is a general requirement, "the Second Circuit has observed, '[t]he regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight.'" *Nezelek v. Astrue*, 2009 WL 1310518, at *8 n. 8 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) (the ALJ's finding that plaintiff can perform sedentary work if "she is given several breaks or allowed to change positions often" does not contradict the Social Security regulations defining "sedentary work")).

[10] Plaintiff ultimately had a total knee replacement in February of 2012. (T. 666). Dr. Wiesner stated that plaintiff was doing well after the surgery. (*Id.*)

based his conclusion on the assumption that plaintiff's low back pain was "secondary to probable degenerative disc disease." (T. 29). However, "a subsequent" MRI of plaintiff's lumbar spine was normal. (*Id.*)

Plaintiff argues that the ALJ formed his own medical opinion when he found that plaintiff did not have to alternate positions based on a negative MRI of his lower spine. (T. 29). While there were physicians who opined that plaintiff had to alternate between sitting and standing, the ALJ placed "substantial weight" on plaintiff's treating physician, Dr. Federowicz, an orthopedic surgeon, who stated on January 22, 2009 that plaintiff was "coming in today seeking disability on the advice of his lawyer." (T. 455). The doctor felt that "[a]t this point, I feel that the patient does have a moderate amount of disability from his knee difficulties, however, I feel that he is capable of performing a sit-down job as well as a sedentary type of job with regards to his lower extremities." (*Id.*) However, this opinion shows that Dr. Federowicz was referring only to plaintiff's knee impairment, and not any problems with his back.

Additionally, on April 30, 2009, Dr. Lawrence Schulman, an Independent Medical Examiner for Workers Compensation, found that repeat x-rays of plaintiff's left knee "apparently showed advanced degenerative joint disease," and plaintiff could "only return to work in a light duty capacity. He cannot do prolonged standing or walking or ladder climbing, kneeling, jumping or stair climbing. He is confined to a sedentary position . . . . He basically would have to do sedentary work only." (T. 465). In making this determination, in addition to reexamining plaintiff, he reviewed a previous examination that he conducted of the plaintiff in 2008, as well as Dr.

Federowicz's records dated January 28, 2008; May 9, 2008; May 16, 2008; May 23, 2008; July 18, 2008; and October 22, 2008.[11]  Dr. Schulman clearly found, as did the ALJ, that plaintiff knee impairment would not allow him to perform his former work as a sanitation truck driver. (*Id.*)  Neither Dr. Schulman, nor Dr. Federowicz mentioned the need to alternate between sitting and standing.  The reason for this, may have been because they were both evaluating plaintiff's knee.

The ALJ stated that even Dr. Fang's opinion would not preclude the plaintiff from performing sedentary work, except for the conclusion that plaintiff would be required to alternate positions frequently. (T. 29-30).  The ALJ based this rejection of Dr. Fang's conclusion on the negative MRI findings.  Finally, the ALJ discounted treating physician Dr. Wacendak's RFC evaluation because the doctor noted on the side of the page that his opinion regarding the plaintiff's abilities was based only upon the plaintiff's own report, and that plaintiff was "not tested" by the doctor. (T. 30, 595-96).  The ALJ found that Dr. Wacendak's opinion was inconsistent with the objective medical and other evidence of record as well as with the longitudinal record of the plaintiff's medical care. (T. 30).

A review of Dr. Wacendak's RFC evaluation shows clearly that he qualified his statements regarding plaintiff's physical abilities with a notation that his opinion was based solely upon the plaintiff's claims and not on the doctor's testing. (T. 595-96).  Thus, the ALJ's failure to afford Dr. Wacendak's RFC evaluation greater weight is

---

[11] Plaintiff has amended his onset date to January of 2009, but clearly, Dr. Schulman felt in April of 2009, that plaintiff could perform sedentary work.

supported by substantial evidence. *See Baladi v. Barnhart*, 33 Fed. App'x at 564 (ALJ entitled to reject treating physician's opinion when the conclusions were based upon subjective complaints of pain and unremarkable objective tests).

Although the ALJ's opinion may have been supported by substantial evidence, given the information that he had before him at the time, the misunderstanding of plaintiff's diagnosis of fibromyalgia could also have affected the ALJ's decision regarding whether plaintiff needed to alternate between sitting and standing. The ALJ stated that "because of the claimant's negative lumbar spine MRI, . . . the undersigned finds no support in the record for Dr. Fang's conclusion that the claimant must be allowed to alternate between sitting and standing." (T. 29-30, 535 - essentially normal study on 6/10/10). However, if plaintiff was properly diagnosed with fibromyalgia, this could explain his limitations, notwithstanding the negative lumbar MRI. This could also have explained why neither Dr. Federowicz, nor Dr. Schulman gave any opinion about the requirement of a "sit/stand option." This information could also have changed the ALJ's opinion regarding plaintiff's credibility, particularly when both Dr. Federowicz's and Dr. Schulman's evaluations predated Dr. Fang's diagnosis and of fibromyalgia subsequent report.

It is true that the "mere diagnosis of fibromyalgia without a finding as to the severity of the symptoms and limitations does not mandate a finding of disability." *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008). *See also Prince v. Astrue*, 514 F. App'x 18, 19 (2d Cir. 2013) (quoting *Rivers*, 280 F.3d at 22). However, because the ALJ was mistaken in his belief that Dr. Wang did not properly diagnose fibromyalgia,

it could have made a difference in the ultimate analysis. The ALJ also erred when he stated that Dr. Fang found that plaintiff's *mental* impairment restricted his concentration. (T. 31). Dr. Fang stated during her deposition that she was referring to his *pain*, and *not* his mental impairment, although the plaintiff had *also* been diagnosed with depression, and his depression could make plaintiff's perception of his physical impairment worse.[12] (T. 710-11).

Finally, the new evidence showed that plaintiff ultimately had knee replacement surgery on February 12, 2011. (T. 664). Dr. Wiesner's December 22, 2011 report states that plaintiff "has a history of longstanding severe pain and degenerative joint disease of the left knee." (T. 667). Plaintiff had been scheduled for his knee replacement in September of 2011, but had to cancel due to "family matters." Plaintiff told Dr. Wiesner that he wished to reschedule the surgery because "he [was] continuing to have significant pain and he [was] ready at this point to schedule intervention." (*Id.*) Dr. Wiesner's examination revealed "irritable range of motion from 0 to 115 degrees" with "medial and patellofemoral joint tenderness." Dr. Wiesner's impression was "[s]evere degenerative joint disease of the left knee." (*Id.*)

Plaintiff's condition could have gotten worse, or this information may have related to the severity of his existing degenerative joint disease and provide support for finding that plaintiff was suffering severe pain during the period covered by the ALJ's decision. Dr. Wiesner is a treating physician. Because the Appeals Council

---

[12] Dr. Russell was quite clear that plaintiff's mental impairment would not interfere with his concentration for work purposes.

failed to analyze why it rejected the opinions of plaintiff's treating physicians, this court cannot find that the Appeals Council's determination was supported by substantial evidence.

### 4. Vocational Expert ("VE")

#### a. Legal Standards

Once the plaintiff shows that he cannot return to his previous work, the Commissioner bears the burden of establishing that the plaintiff retains the RFC to perform alternative substantial gainful work in the national economy. *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004). In the ordinary case, the ALJ carries out this fifth step of the sequential disability analysis by applying the applicable Medical-Vocational Guidelines. *Id.*

"If a claimant has nonexertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert[,]" rather than relying solely on the Guidelines. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (*citing Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)). The mere existence of a nonexertional impairment does not automatically require consultation with a vocational expert nor preclude reliance on the Guidelines. *Bapp v. Bowen*, 802 F.2d at 603. The requirement for a vocational expert is triggered when a nonexertional impairment causes an "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Id*. at 605-06. The appropriateness of applying the Guidelines and the necessity for expert testimony

must be determined on a case-by-base basis. *Id*. at 605.

### b.    Application

In this case, plaintiff argues that the ALJ should have consulted a VE, even under the ALJ's own findings, because the ALJ found that plaintiff was limited to sedentary work, and could only understand, remember, and carry out simple instructions, with moderate restrictions on his ability to concentrate. (Pl.'s Br. at 21-22). Counsel contacted a VE after the ALJ's decision and submitted his testimony to the Appeals Council. (T. 315-22). Counsel asked the VE whether a person could perform work that has a "reasoning level of 2 or greater," if that person could only perform sedentary work and could only perform simple tasks under supervision and independently, only maintain attention and concentration for simple tasks. (T. 320). The VE responded that the individual would not be able to perform work at a "level 2" because level 2 requires the ability to follow detailed instructions. (*Id.*) The VE testified that if an individual was limited to "level 1," he would not be able to perform any sedentary occupations. (*Id.*) Plaintiff thus argues that even under the ALJ's RFC, plaintiff would be disabled because there are no jobs available to him.

There is no reference in the record to "level 1" or "level 2" work. The regulations provide that the mental activities generally required by competitive, remunerative unskilled work include understanding and carrying out "simple" instructions; making simple work-related decisions,; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. *Woodmancy v. Colvin*, No. 5:12-CV-991, 2013 WL 5567553, at

*5 (N.D.N.Y. Oct. 9, 2013) (citing SSR 96-9p, 61 Fed. Reg. 34,4843 (July 2, 1996); 20 C.F.R. § 416.921(b)(3)-(6)). *See also* 20 C.F.R. § 404.1521(b)(1)-(6).

The court notes that VE Alberigi has submitted testimony to the Appeals Council in another case in the Northern District of New York, in which he opined that if an individual were limited to sedentary work, but was only able to understand and carry out simple instructions, the occupational base for sedentary work would be materially limited. *See Bradley v. Colvin*, No. 2013 WL 5464097, at *2 (N.D.N.Y. Sept. 30, 2013). The court in *Bradley* found that this testimony did not alter the ALJ's finding, when the ALJ's determination that the plaintiff could perform the basic mental demands of unskilled work was supported by substantial evidence. *Id. See also* SSR 96-9p, 1996 WL 374185, at *3 (the full range of sedentary work involves nonexertional activities "such as capacities for . . . understanding, remembering, and carrying out simple instructions."); *Lewis v. Colvin*, No. 13-436, 2013 WL 6596942, at *2 (2d Cir. Dec. 17, 2013) (upholding the Commissioner's finding that the ability to only understand, remember, and carry out simple instructions had little or no effect on the occupational base of unskilled light work, and the ALJ did not err in failing to call a VE). The Social Security Rulings also provide that sedentary work requires the ability to make judgments that are "commensurate with the functions of unskilled work – i.e., simple work-related decisions." SSR 96-9p, 1996 WL 374185, at *9. The individual must be able to respond appropriately to supervision, co-workers, and usual work situations. *Id.* Finally, the full range of unskilled sedentary work requires the ability to deal with changes in a routine work setting. *Id.* Thus, if plaintiff can

understand, remember, and carry out simple instructions, the range of sedentary work is not materially limited and would not necessarily require the ALJ to call a VE.

This court cannot find that VE Alberigi's testimony is dispositive of plaintiff's inability to perform work in the national economy, and appears to be contrary to the Social Security Rulings. However, because of the ALJ's fundamental error in rejecting Dr. Fang's findings, when the case is sent back to the Commissioner, the ALJ may reconsider whether plaintiff's non-exertional impairments restrict him sufficiently to justify calling a VE.

### 5.    Reversal or Remand

This court has found that the Appeals Council's decision is not supported by substantial evidence and must now determine whether reversal and remand for additional proceedings or reversal with a remand for calculation of benefits is appropriate. Remand to the Commissioner for further development of the evidence is appropriate when there are gaps in the administrative record or where the ALJ has applied an improper legal standard. *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999). Reversal for calculation of benefits is appropriate only if the record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no useful purpose. *Id.*

Plaintiff's attorney argues in the alternative that the case should be reversed for benefits or remanded for further consideration. This court finds that there are sufficient gaps in the record that a reversal for calculation of benefits is not warranted. Thus, this court recommends that the case be reversed and remanded for further

administrative proceedings consistent with this opinion.

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED**, that the decision of the Commissioner be **REVERSED**, and case be **REMANDED PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)** for further proceedings consistent with this opinion.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: December 20, 2013

Hon. Andrew T. Baxter
U.S. Magistrate Judge